IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHARON PERROTTA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-0394-CV-W-REL |
| | ) |
| WHITE OAK MANOR, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is defendant's motion for summary judgment on counts one and two on the grounds that (1) plaintiff has failed to establish a prima facie case of race discrimination because she suffered no adverse employment action and white employees were not treated differently than she was, and (2) plaintiff cannot establish that she worked in a racially hostile environment. In her response, plaintiff concedes that summary judgment should be granted as to her race discrimination claim, but she argues that the defendant's conduct toward all six plaintiffs in this case constitutes a working environment charged with racist comments, racist conduct, and racist treatment of black employees. I find that there remains in dispute a genuine issue of material fact. Therefore, defendant's motion for summary judgment on count two will be denied.

## I. BACKGROUND

On April 27, 2005, plaintiff filed a complaint against defendant, a nursing home and long-term care facility, alleging she was racially discriminated against, in violation of Title VII and 42 U.S.C. § 1981, and that she was subject to racial harassment, in violation of Title VII and 42 U.S.C. § 1981. On June 7, 2007, defendant filed a motion for summary judgment (document number 103), arguing that plaintiff admitted in her deposition that she suffered no adverse employment action, and she failed to demonstrate that similarly situated white employees were treated different than she was. Defendant's motion also states that plaintiff's own deposition testimony establishes that she did not work in a racially hostile work environment.

On June 15, 2007, with leave of court, defendant filed supplemental authority (document number 107).

On August 17, 2007, plaintiff filed a response to defendant's motion for summary judgment (document number 120). In her response, plaintiff states that she "does not object to the Court granting Defendant's Motion for Summary Judgment as to Plaintiff's Count for race discrimination." However, plaintiff argues that her racial harassment claim should survive summary judgment because of the harassment directed not only at plaintiff, but at all of the other plaintiffs in this case (there originally were eight plaintiffs).

2

On September 13, 2007, defendant filed a reply (document number 126), arguing that all of the facts plaintiff did not controvert are deemed admitted, and the additional facts offered by plaintiff in her response are not supported by any evidence.

## II.  STANDARD FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The key to determining whether summary judgment is proper is ascertaining whether there exists a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if:  (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party. American Academy of Family Physicians v. United States, 75 A.F.T.R.2d 95-1709 (W.D. Mo. 1995), aff'd 91 F.3d 1155 (8th Cir. 1996).  The party moving for summary judgment has the burden of proving that these requirements for summary judgment have been met.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

3

In a summary judgment analysis, a court must first consider whether there are any issues of fact. If the only issues are issues of law, then summary judgment is appropriate. <u>Disesa v. St. Louis Community College</u>, 79 F.3d 92, 94 (8th Cir. 1996). If issues of fact are raised, a court must consider whether these issues are material to the outcome of the case. Materiality is identified by the substantive law that is to be applied. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248. Factual disputes that are collateral to the substantive law will not preclude summary judgment. <u>Id</u>.

In addition to the requirement that a dispute of fact be material, the dispute must also be genuine. A dispute of fact is considered genuine if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. <u>Id</u>. at 249. When considering a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. <u>Id</u>. at 255. If the evidence submitted by the non-moving party is merely colorable or is not significantly probative, then summary judgment may be granted. <u>Id</u>. at 249-250.

Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). This burden

4

is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact. Id. at 323. If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 474 U.S. at 248. The trial judge then determines whether a trial is needed -- "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

*III. PROPOSED UNCONTROVERTED FACTS*

*A. UNCONTROVERTED FACTS*

Below, typed in bold, are the facts I find to be uncontroverted by the record before me. Any uncontroverted facts without citations to the record are not controverted by the plaintiff in her response.

**1. Plaintiff Sharon Perrotta (an African-American) brought suit against White Oak Manor, a nursing home and long-term care facility in Gladstone, Missouri, alleging she was subjected to racial discrimination (Cont I) and racial harassment (Count II) while employed at White Oak Manor.**

**2. Plaintiff's allegations of disparate treatment and racial harassment are based on the same alleged course of conduct by defendant.**

5

3. Plaintiff Perrotta worked as a Certified Nursing Assistant ("CNA") at White Oak Manor from December 21, 2002, until October 30, 2003, when she voluntarily transferred to Barry Manor, another nursing home, to assume a trial position as Activities Director there.

5. Plaintiff's first allegation is her assertion that she heard a former Administrator tell the housekeeping supervisor "that the outside of [White Oak] was terrible and when he came back through, she had better have someone out there picking up [the trash] like they are picking cotton."

6. Plaintiff admitted in deposition that the former Administrator's purported comment about trash had no effect on her job.

7. Plaintiff's second allegation is her assertion that the former Administrator told a joke about "monkeys in a tree or something" that she believed was racist in nature.

8. Plaintiff admitted in deposition that she could not recite the details of the joke.

9. Plaintiff's third allegation is her assertion that the staffing coordinator disparaged "Juneteenth," a holiday commemorating the end of slavery in the United States, by stating, "What is that, another black holiday? You already get the whole month of February."

6

10. Plaintiff testified in deposition that she would characterize the staffing coordinator as "someone who would talk without thinking."

13. Plaintiff's fourth allegation is her assertion that she was required to work on the west wing of White Oak.

14. Plaintiff admitted in deposition that White Oak frequently experienced staffing shortages while she worked there.

15. To meet staffing needs at White Oak, CNAs are sometimes transferred (or "pulled") from one wing of the facility to work on another wing. The decision to "pull" a CNA to a different wing is determined by patient care concerns and staffing requirements. The decision to pull a particular CNA is based on staffing needs and the CNA's experience level. It has nothing to do with race.

> Plaintiff disputes this fact. In support of the fact, defendant cites to the affidavit of Stephanie Sawyer, the Office Manager for defendant White Oak Manor. In disputing this fact, plaintiff cites to her own deposition. The page cited by plaintiff includes her testimony that the easy wing of the nursing home (i.e., the wing with patients who are able to bear weight) is staffed mostly by white employees, while the difficult wing (i.e., the wing with patients who cannot bear weight) is staffed mostly by black employees.

7

She testified that when the easy wing was understaffed, employees from the difficult wing were pulled to the easy wing. But when the difficult wing was understaffed, management would not pull employees from the easy wing because "they would either just flat out say no" or in one instance a white CNA walked off the job. There is nothing in plaintiff's deposition transcript which provides a basis for this testimony. Federal Rule of Civil Procedure 56(e) requires that evidence presented "be made on personal knowledge" and to "set forth such facts as would be admissible in evidence" and "show affirmatively that the affiant is competent to testify to the matters stated therein." Because plaintiff's deposition does not indicate how she knows that employees in the easy wing said "no" when directed to switch wings, or how she knows what motivated management to pull or not to pull CNAs to a different wing, there is no admissible evidence to contradict the evidence presented by defendant on this fact.

**16. Nursing staff are assumed to work at various locations at White Oak (and on different wings) based on their level of experience and White Oak's staffing needs. White Oak has never assigned staff to any particular location or wing based on race.**

Plaintiff contests this fact. In support of this fact, defendant sites to the affidavit of the Office Manager of

8

White Oak. In contesting the fact, plaintiff points to the same deposition transcript pages as are used to contest fact number 15 above. As discussed above, plaintiff has offered no support for the admissibility of this testimony, and therefore I find that this fact is undisputed. However, I am somewhat puzzled by the offering of a fact that staffing was "assumed". It is irrelevant whether management made any assumptions. The only relevant portion of this fact is the portion which states that defendant has never assigned staff to any particular location or wing based on race.

**20. Plaintiff admitted in deposition that she was "perfectly happy" doing what she was doing at White Oak Manor.**

*B. CONTROVERTED FACTS*

The following proposed facts are either not supported by the evidence cited or are properly controverted by plaintiff:

4. In her deposition, plaintiff testified that her claims of discrimination/harassment were limited to four allegations.

Plaintiff disputes this fact. I find that this fact remains in dispute because although defendant cites nine pages of plaintiff's deposition (without limiting it to any particular lines), those pages do not establish that plaintiff's claims are limited to four allegations. In those deposition pages, plaintiff is asked about comments made in her presence by employees of White Oak Manor;

9

however, there is no specific statement in any of those pages that her claims do not include any other allegations.

11. Plaintiff admitted in deposition that when she told the staffing coordinator she was offended by her comment, "that was the end of it."

Plaintiff disputes this fact as having been taken out of context. However, a review of the deposition indicates that this proposed fact is not accurate.

> A. Those two statements were made and they went their way and the coordinator went about her business.
>
> Q. So that was the end of it?
>
> A. To the best of my knowledge, yes, sir.
>
> Q. Did you tell the staffing coordinator that you were offended by her comment?
>
> A. Absolutely.
>
> Q. What did you say?
>
> A. That she was wrong for saying that.
>
> Q. How did she respond?
>
> A. I don't remember her words verbatim. . . .

(D. Ex. A, p. 17, l. 19 - p. 18, l. 4).

The proposed fact states that plaintiff's comment "that was the end of it" was in relation to her reporting that she was offended by the comment. However, the deposition makes clear that her statement was in relation to the episode, not her report of having been offended.

10

12. Plaintiff admitted in deposition that staffing coordinator's purported comment about "Juneteenth" affected her only to the extent that it made her "uncomfortable."

> Defendant cites to pages 18 and 19 of plaintiff's deposition, which do not support this proposed fact.
>
> Q. What effect did that comment have on your job?
>
> A. Again, it was just hard or difficult, it was uncomfortable having to work with people knowing how they felt about certain issues, black people in particular.
>
> Plaintiff testified that working with people who feel negatively toward blacks made her uncomfortable, not merely listening to the comment about Juneteenth.

17. While plaintiff was employed at White Oak, the former Administrator who allegedly made the comments to which plaintiff objected left White Oak and became an Administrator of another nursing home, Barry Manor.

> Plaintiff contests this fact on the ground that the evidence cited by defendant in its motion does not support this proposed fact. I agree. Defendant cites to page 14 of plaintiff's deposition, on which she states that <u>she</u> transferred to Barry Manor. There is nothing on that page to support the allegation that an administrator transferred to Barry Manor.
>
> However, in defendant's reply, defendant states that the wrong deposition pages were cited in the motion. Upon

11

reviewing the correct deposition pages, I find that
plaintiff did testify that Dr. Alexander transferred from
White Oak Manor to Barry Manor. However, there is nothing
in any of the proposed undisputed facts that identifies Dr.
Alexander as the person who committed any of the acts
complained of by plaintiff[1].

18. The administrator who allegedly made the comments to which plaintiff objected offered plaintiff a job as the Activities Director at Barry Manor.

> Plaintiff contests this fact on the ground that the
> evidence cited by defendant does not support this proposed
> fact. I agree. Defendant cites to page 7 of plaintiff's
> deposition, on which she states that she was offered a job
> as the activities director at Barry Manor; however, it does
> not indicate who offered her that job. In defendant's
> reply, defendant states that the wrong deposition pages were
> cited in the motion. Again, after reviewing these new
> pages, I find that plaintiff did testify that she was
> offered a job as Activities Director; however, there is

---

[1] Even plaintiff's complaint alleges "a manager", it does not identify the person. As defendant's reply so aptly states: "'Judges are not like pigs, hunting for truffles buried in briefs.' . . . The Court is . . . 'not obligated to wade through and search the entire record for some specific facts that might support [a proposition].'" (page 4 of reply, citations omitted). It may very well be that Dr. Alexander is the alleged culprit. However, I cannot make such an assumption, and I will not search the entire record for this evidence.

Case 4:05-cv-00394-REL   Document 131   Filed 11/05/07   Page 12 of 18

nothing in any proposed undisputed fact identifying Dr. Alexander as the person who committed any of the acts complained of by plaintiff.

19. Plaintiff accepted the administrator's offer, left White Oak, and went to work for the administrator who allegedly made the comments to which plaintiff objected.

    Plaintiff contests this fact on the ground that the evidence cited by defendant does not support this proposed fact. I agree. Defendant cites to page 14 of plaintiff's deposition which has absolutely nothing to do with this proposed fact.

    In its reply, defendant again admits that the wrong deposition pages were cited in the motion. After reviewing the correct deposition pages, I note that plaintiff did testify that she left White Oak, but she did not testify on these additional pages that Dr. Alexander was the person who committed the acts of which plaintiff complains.

## *IV. RACIAL HARASSMENT*

In order to establish a claim for hostile and abusive work environment, plaintiff must prove that: (1) she belonged to a protected group, (2) she was subjected to unwelcome harassment, (3) there was a causal nexus or a motivating factor between the harassment and her race, (4) the harassment was sufficiently severe or pervasive that a reasonable person would find that the

13

harassment affected a term, condition, or privilege of employment, and (5) defendant knew or should have known of the harassment and failed to take prompt and effective remedial action. Green v. Franklin National Bank of Minneapolis, 459 F.3d 903, 910 (8th Cir. 2006); Mems v. City of St. Paul, 327 F.3d 771, 782 (8th Cir. 2003), cert. denied, 540 U.S. 1106 (2004). The underlying wrongful conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim. Green v. Franklin National Bank of Minneapolis, 459 F.3d at 910; Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998). A claim of racial harassment in the workplace focuses on the pervasiveness of the racially discriminatory conduct and also the employer's possible knowledge of that conduct and failure to take remedial action. Tart v. Hill Behan Lumber Company, 31 F.3d 668, 672 (8th Cir. 1994).

In Green v. Franklin National Bank of Minneapolis, 459 F.3d 903 (8th Cir. 2006), the district court granted summary judgment on the plaintiff's hostile work environment claim because the harassment was not severe or pervasive enough to be actionable. In that case, the plaintiff's co-workers referred to her as "monkey" and one said that her head was shaped funny. The court

14

of appeals disagreed[2].

> "Unquestionably, a working environment dominated by racial slurs constitutes a violation of Title VII." . . . However, if the comments are "[s]poradic or casual," they are unlikely to establish a hostile work environment claim. Frequency of harassment is a factor, but even infrequent conduct can be severe enough to be actionable.
>
> In the present matter, Green's allegations about Howard's statements to her are sufficient to be actionable. His comments were frequent and directed at Green. While Green did not make a handwritten notation of all the times Howard called Green a "monkey," she created a record of several instances. Green had told Howard that she thought the term "monkey" was roughly equivalent to "Nigger." Other courts have agreed with Green's assessment of calling African-Americans "monkeys." "To suggest that a human being's physical appearance is essentially a caricature of a jungle beast goes far beyond the mere unflattering; it is degrading and humiliating in the extreme." The use of the term "monkey" and other similar words have been part of actionable racial harassment claims across the country. . . .
>
> In all, there are eight alleged instances of Howard using racially insensitive terms toward Green in a three-month time frame. We have found just a few incidents in a longer time span to be sufficient for a hostile work environment claim.

Id. at 911 (citations omitted).

In this case, plaintiff alleged all of the essential elements of a racial harassment claim in her complaint. Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." Celotex Corp.

---

[2]The court of appeals did not reverse, however, finding that summary judgment was proper because the employer established that it took legally sufficient remedial action. Id. at 911.

15

Case 4:05-cv-00394-REL   Document 131   Filed 11/05/07   Page 15 of 18

v. Catrett, 477 U.S. at 325. This burden is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact. Id. at 323. If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 474 U.S. at 248.

Here, defendant has failed to establish an absence of evidence to support the plaintiff's claim. First, there is no evidence of the identities of those alleged to have made racial comments and jokes. They are referred to as administrators, but are not identified in plaintiff's complaint. There are references to "he" and to "she" in the deposition. Defendant makes the broad assumption that Dr. Alexander is the culprit, yet provides no evidence to establish that as fact.

Second, defendant has not established an absence of sufficiently severe or pervasive harassment. Defendant's proposed undisputed facts include plaintiff's first allegation (the cotton picking comment), plaintiff's second allegation (monkey joke), plaintiff's third allegation (Juneteenth day), and plaintiff's fourth allegation (working in the west wing). There is no undisputed evidence that these are plaintiff's only allegations of racial harassment. In fact, the complaint

16

includes many others, as does plaintiff's response[3]. Merely citing evidence of four allegations of racial harassment and concluding that they do not amount to a hostile environment is not sufficient to justify summary judgment. It may very well be that this is all the evidence there is. It is possible that a jury will find that this evidence does not amount to a hostile work environment. However, with what I have been given here, I simply cannot find that there is no genuine, material dispute of fact and that a reasonable jury could return a verdict only for the defendant. Because defendant has failed to establish an absence of evidence to support the plaintiff's claim, its motion for summary judgment on count two must be denied.

## *V.  CONCLUSION*

Based on the above findings of undisputed facts and the law as discussed in section IV., I find that there remains a genuine issue of material fact and that defendant therefore is not entitled to summary judgment on this record.

It is

ORDERED that defendant's motion for summary judgment on count one is granted as unopposed.  It is further

---

[3]Although I note, as defendant did, that many of these allegations are unsupported by any citations to the record. However, as discussed above, it is <u>defendant's</u> burden to establish an absence of evidence to support the plaintiff's case.

17

ORDERED that defendant's motion for summary judgment on count two is denied.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
November 5, 2007