IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PATSY BEAUVOIR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-0394-CV-W-REL |
| | ) |
| WHITE OAK MANOR, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is defendant's motion for summary judgment on counts three and four on the grounds that (1) plaintiff has failed to establish a prima facie case of disparate treatment because she was not treated differently because of her race and because defendant had a legitimate nondiscriminatory reason for discharging plaintiff; and (2) plaintiff cannot establish that she worked in a racially hostile environment. In her response, plaintiff concedes that summary judgment should be granted as to her race discrimination claim, but she argues that the defendant's conduct toward all six plaintiffs in this case constitutes a working environment charged with racist comments, racist conduct, and racist treatment of black employees. I find that there remains in dispute a genuine issue of material fact. Therefore, defendant's motion for summary judgment on count two will be denied.

## I. BACKGROUND

On April 27, 2005, plaintiff filed a complaint against defendant, a nursing home and long-term care facility, alleging she was racially discriminated against, in violation of Title VII and 42 U.S.C. § 1981, and that she was subject to racial harassment, in violation of Title VII and 42 U.S.C. § 1981. On June 7, 2007, defendant filed a motion for summary judgment (document number 99), arguing that plaintiff cannot establish that she was treated differently than similarly-situated individuals not a part of her protected class, and because defendant has a legitimate nondiscriminatory reason for discharging plaintiff. Defendant's motion also states that plaintiff's own deposition testimony establishes that she did not work in a racially hostile work environment.

On June 15, 2007, with leave of court, defendant filed supplemental authority (document number 107).

On August 17, 2007, plaintiff filed a response to defendant's motion for summary judgment (document number 118). In her response, plaintiff states that she "does not object to the Court granting Defendant's Motion for Summary Judgment as to Plaintiff's Count for race discrimination." However, plaintiff argues that her racial harassment claim should survive summary judgment because of the harassment directed not only at plaintiff, but at all of the other plaintiffs in this case (there

originally were eight plaintiffs).

On September 13, 2007, defendant filed a reply (document number 127), arguing that all of the facts plaintiff did not controvert are deemed admitted, and the additional facts offered by plaintiff in her response are not supported by any evidence.

## *II.   STANDARD FOR SUMMARY JUDGMENT*

Rule 56(c), Federal Rules of Civil Procedure, permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The key to determining whether summary judgment is proper is ascertaining whether there exists a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party. American Academy of Family Physicians v. United States, 75 A.F.T.R.2d 95-1709 (W.D. Mo. 1995), aff'd 91 F.3d 1155 (8th Cir. 1996). The party moving for summary judgment has the burden of proving that these requirements for summary judgment have been met. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In a summary judgment analysis, a court must first consider whether there are any issues of fact. If the only issues are issues of law, then summary judgment is appropriate. Disesa v. St. Louis Community College, 79 F.3d 92, 94 (8th Cir. 1996). If issues of fact are raised, a court must consider whether these issues are material to the outcome of the case. Materiality is identified by the substantive law that is to be applied. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. Factual disputes that are collateral to the substantive law will not preclude summary judgment. Id.

In addition to the requirement that a dispute of fact be material, the dispute must also be genuine. A dispute of fact is considered genuine if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. Id. at 249. When considering a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. Id. at 255. If the evidence submitted by the non-moving party is merely colorable or is not significantly probative, then summary judgment may be granted. Id. at 249-250.

Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). This burden

4

is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact. Id. at 323.  If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 474 U.S. at 248.  The trial judge then determines whether a trial is needed -- "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250.

*III. PROPOSED UNCONTROVERTED FACTS*

*A.   UNCONTROVERTED FACTS*

Below, typed in bold, are the facts I find to be uncontroverted by the record before me.  Any uncontroverted facts without citations to the record are not controverted by the plaintiff in her response.

    1.   **Plaintiff Patsy Beauvoir (an African-American) brought suit against White Oak Manor, a nursing home and long-term care facility in Gladstone, Missouri, alleging she was subjected to racial discrimination (Count III) and racial harassment (Count IV) while employed at White Oak Manor.**

    2.   **Plaintiff's allegations of racial discrimination are based on the same alleged course of conduct as her allegations of racial harassment.**

3.   Plaintiff Beauvoir worked at White Oak Manor as a Certified Nursing Assistant ("CNA") from October 4, 2002, until she was discharged on August 2, 2003, for unsatisfactory work performance.

5.   Plaintiff's first allegation is her assertion that she was discharged in retaliation for filing an EEOC charge.

6.   Plaintiff admitted in deposition she believed that the only reason for her discharge was because she had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

7.   Plaintiff's charge of discrimination filed with EEOC does not include an allegation that her discharge was in retaliation for filing a charge with the EEOC.

8.   Plaintiff's allegations in this suit do not include an allegation that she was discharged in retaliation for filing an EEOC charge.

9.   Plaintiff's second allegation is her assertion that she was required to work on the west wing of White Oak, while white employees worked on the east wing.

10.  Plaintiff admitted in deposition that when she worked on the west wing she was never required to do anything outside the range of typical CNA job responsibilities.

**11. Plaintiff's third allegation is her assertion that White Oak would transfer or "pull" CNAs from the west wing to work on the east wing.**

**12. To meet staffing needs at White Oak, CNAs are sometimes transferred (or "pulled") from one wing of the facility to work on another wing. The decision to "pull" a CNA to a different wing is determined by patient care concerns and staffing requirements. The decision to "pull" a particular CNA is based on staffing needs, the CNA's experience level, and other criteria. It has nothing whatsoever to do with race.**

> Plaintiff disputes this fact. In support of the fact, defendant cites to the affidavit of Stephanie Sawyer, the Office Manager for defendant White Oak Manor. In disputing this fact, plaintiff cites to her own deposition. The pages cited by plaintiff include her testimony that the easy wing of the nursing home (i.e., the wing with patients who are "self care" requiring little work) is staffed mostly by white employees, while the difficult wing (i.e., the wing with patients who needed total care) is staffed mostly by black employees. She testified that when the easy wing was understaffed, employees from the difficult wing were pulled to the easy wing. But when the difficult wing was understaffed, they had to work understaffed. There is nothing in plaintiff's deposition testimony which gives any

7

reason (race or otherwise) for CNAs to be pulled from one wing to another. In addition, Federal Rule of Civil Procedure 56(e) requires that evidence presented "be made on personal knowledge" and to "set forth such facts as would be admissible in evidence" and "show affirmatively that the affiant is competent to testify to the matters stated therein." Because plaintiff's deposition does not indicate how she would know the reason why certain employees were pulled from one wing from another, any testimony which alludes to the fact that the decision was based on race is purely speculative.

**13. Plaintiff admitted in deposition that there are minimum staffing requirements established by state law for White Oak and all nursing homes.**

**14. Plaintiff admitted in deposition that there were normally more CNAs assigned to work the west wing than were assigned to work the east wing.**

**15. Plaintiff admitted in deposition that the staffing coordinator's job was to adequately staff White Oak, and that the staffing coordinator "had to do what she had to do, and she had to place [CNAs] where she was told."**

**16. Plaintiff's fourth allegation is her assertion that the staffing coordinator asked her about her request to take the day**

8

off for "Juneteenth."

17. Plaintiff admitted in deposition that the staffing coordinator was not familiar with "Juneteenth."

19. Plaintiff's fifth allegation is her assertion that a white employee who was a "no call, no show" was not discharged.

20. Plaintiff admitted in deposition that she was not discharged for being a "no call, no show."

21. Plaintiff's sixth allegation is her assertion that she was not paid for one day of overtime she worked during a snowstorm in 2003.

22. Plaintiff admitted in deposition that she volunteered to work overtime during the snowstorm.

24. Plaintiff admitted in deposition that she did not know whether any of the other employees who worked overtime during the snowstorm were paid overtime.

25. Plaintiff's seventh allegation is her assertion that on several other occasions she was not properly paid for the hours she worked.

26. Plaintiff admitted in deposition that she could not specify how many times she purportedly was not properly paid, that she could not recall the dates when she purportedly was not properly paid, and that she had no direct evidence to support her allegation that she was not properly paid.

Plaintiff disputes this fact.  Plaintiff's deposition testimony reads in part as follows:

Q. Well, how many times did you work and not get paid?

A. Let me think, because I'm not for sure exactly.  It was several times that I was missing time off of my check that they can't pay account of.

Q. Do you have a listing of those times?

A. No, I didn't keep up with them.

Q. How many times did that happen?

A. I don't remember exactly how many.

Q. Was it more than ten?

A. Not more than ten, no.

Q. Was it more than five?

A. I'm not for sure.

Q. Do you remember any of the dates?

A. No, it is too far back.  I can't remember.

Q. How do you know for sure that you weren't paid?

A. Because I usually add up my time.  And it never comes out to what they have down on the check stub.  It wasn't really never hardly right.  That's how I know I wasn't getting paid.

Q. Now when you clocked in to work, there was a computerized time keeping system, right?

A. Right.

Q. So you would swipe a magnetic card when you came in, correct?

A. That is correct.

Q. And then on the way out you would swipe a magnetic card again, correct?

A. That is correct.

Q. Then the time clock would tell how much time or how many hours you worked, correct?

A. It is supposed to, yeah.

Q. When you say "it is supposed to," does that mean that sometimes you thought it was wrong?

A. No. I am saying that they can change the time if they want to.

Q. How do you know that?

A. Because I work in nursing homes and I know they can get into the computer and change the times if they want to.

Q. Do you know for a fact that White Oak Manor changed your time?

A. Well, I don't know if they changed my time, they didn't pay me for what I worked for.

Q. But you don't know for a fact that your times were changed, do you?

A. No. I know I didn't get paid for what I worked.

Q. What did you do about it?

A. Well, you talk to them about it and they say okay, I'll look into it and it will be on the next check. And then it won't be on the next check and you go back to them and you bring it up again. It is always on the next check and it don't be on the next check.

Q. Did you ever get paid for the time you worked?

A. Yeah, but not all of it all the time.

Q. How much are you missing?

A. It will be different amounts.

11

```
Q.   As you sit here today, do you have any firm idea how
     much time you believe you were shorted?

A.   No, I can't remember.

Q.   Is there some note or document or something that would
     show me that?

A.   No, because I didn't -- I threw away all my check stubs
     and everything, so no, I don't have anymore left.
```
(p. 25, l. 13 - p. 28, l. 3).

In disputing the fact, plaintiff states that she could not remember how many times or when she was improperly paid, but her testimony was that she was improperly paid.

Fed. R. Civ. Proc. 56(e) states that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Here, there is no genuine issue as to this proposed fact. Plaintiff has no evidence, she has no facts. She has nothing beyond her unsupported allegation that she at some unknown time, some unknown number of times, was not paid some unknown amount.

**27. Plaintiff admitted in deposition that the time keeping system at White Oak is computerized whereby each employee is**

**required to swipe a magnetic time card at the start of and end of his shift, the system records the hours an employee works, and the hours are automatically sent to a payroll service for processing.**

**28. Plaintiff admitted in deposition that she had no evidence that White Oak changed her time card.**

> Plaintiff disputes this fact. She states that she testified that while she did not know if her time had been changed, she did know that she had been paid incorrectly.
>
> Because plaintiff cannot rest upon mere allegations when the defendant has properly supported a proposed fact with admissible evidence, this fact is not genuinely in dispute, for the same reason as that outlined at length with proposed fact 26.

**29. Plaintiff's eighth allegation is her assertion that a former Administrator told race-based jokes and made race-based comments.**

**30. Plaintiff admitted in deposition that she heard the former Administrator tell only one purportedly race-based joke.**

**32. Plaintiff testified in deposition that another employee told her that the former Administrator had used the word "pickaninny."**

13

**34. Plaintiff admitted in deposition that she heard from another employee that the former Administrator made a comment about picking up trash outside of the facility.**

**35. Plaintiff admitted in deposition that the former Administrator's purported comments about picking up trash was a "rumor."**

*B. CONTROVERTED FACTS*

The following proposed facts are either not supported by the evidence cited or are properly controverted by plaintiff:

4. Plaintiff testified in deposition that her claims of racial discrimination and harassment were limited to eight allegations.

> Plaintiff disputes this fact. I find that this fact remains in dispute because the deposition page cited by defendant does not establish that plaintiff's claims are limited to eight allegations. On page 12, the page cited by defendant, the questioning relates to the amount of staffing on the east side versus the west side. There is no discussion at all about any of plaintiff's allegations on this deposition page.

18. Plaintiff admitted in deposition that the staffing coordinator's statement about "Juneteenth" had no effect on her job.

14

Plaintiff disputes this fact. I find that this fact
remains in dispute because the deposition page cited by
defendant does not mention "Juneteenth." However, on that
page, plaintiff testified that she was offended because "it"
was an unprofessional statement. Looking back in the
transcript to pages before the cited page, plaintiff
testified that she and several other employees asked to have
off work on June 19, and the staffing coordinator did not
know what June 19 was. She was told that it was the
anniversary of the day the slaves were freed, and the
staffing coordinator asked why they needed another day off
when they got the entire month of February. Plaintiff
testified that she was offended by that statement and
because "February was the shortest month in the year, so why
would she say that?" Plaintiff testified that the statement
was offensive and unprofessional.

23. Plaintiff admitted in deposition that the reason she
was not paid for her overtime during the snowstorm was because
the staffing coordinator forgot to prepare a list of the
employees who worked overtime during the snowstorm.

There is nothing in plaintiff's testimony which
indicates that the staffing coordinator "forgot" to put
plaintiff's name on the list of employees who worked
overtime.

15

31. Plaintiff admitted in deposition that the alleged joke had no effect on her job.

> The "race-based joke" was not identified in the proposed undisputed facts.
>
> Plaintiff contests this fact. In her deposition, she testified that the joke made her angry, and she felt like she did not have to come in and work with a supervisor who is prejudiced. Therefore, defendant's assertion that plaintiff said the joke had no effect on her job is taken out of context.

33. Plaintiff admitted in deposition that the former Administrator's purported use of the word "pickaninny" had no effect on her job.

> Plaintiff contests this fact, pointing out that she testified about the impact of working for someone who is a racist. Plaintiff's deposition does indeed discuss the impact of the "pickaninny" comment in terms of the difficulty in working for someone who is prejudiced.

## IV. RACIAL HARASSMENT

In order to establish a claim for hostile and abusive work environment, plaintiff must prove that: (1) she belonged to a protected group, (2) she was subjected to unwelcome harassment, (3) there was a causal nexus or a motivating factor between the harassment and her race, (4) the harassment was sufficiently

16

severe or pervasive that a reasonable person would find that the harassment affected a term, condition, or privilege of employment, and (5) defendant knew or should have known of the harassment and failed to take prompt and effective remedial action. Green v. Franklin National Bank of Minneapolis, 459 F.3d 903, 910 (8th Cir. 2006); Mems v. City of St. Paul, 327 F.3d 771, 782 (8th Cir. 2003), cert. denied, 540 U.S. 1106 (2004). The underlying wrongful conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim. Green v. Franklin National Bank of Minneapolis, 459 F.3d at 910; Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998). A claim of racial harassment in the workplace focuses on the pervasiveness of the racially discriminatory conduct and also the employer's possible knowledge of that conduct and failure to take remedial action. Tart v. Hill Behan Lumber Company, 31 F.3d 668, 672 (8th Cir. 1994).

Defendant argues that plaintiff has failed to establish that the purported remarks were severe or pervasive because "[d]espite the litany of allegations in her complaint, Plaintiff admitted she personally heard only two comments she believed constituted racial harassment during her ten-month tenure at White Oak." (page 14 of suggestions). However, this fact does not appear in the list of undisputed facts. Curiously, this was not even

17

offered as a proposed undisputed fact.

Defendant then discusses jokes that were allegedly told, the first one being a joke asking "what swings from tree to tree" to which he answered "a monkey." Again, there is nothing in any proposed undisputed fact about this joke.

In this case, plaintiff alleged all of the essential elements of a racial harassment claim in her complaint. Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. at 325. This burden is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact. Id. at 323. If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 474 U.S. at 248.

Here, defendant has failed to establish an absence of evidence to support the plaintiff's claim. The crux of defendant's motion is the fact that plaintiff's claims are limited to eight allegations. However, defendant failed to support that proposed fact with any evidence. Therefore, defendant's discussing a few instances of racial jokes or other racial conduct does not establish that those instances were the

18

<u>only</u> instances that occurred or the <u>only</u> instances of which plaintiff complains.

In a summary judgment motion, it is defendant's burden to establish that there is an absence of evidence to support the plaintiff's claims. It may very well be that this is all the evidence there is. It is possible that a jury will find that this evidence does not amount to a hostile work environment. However, with what I have been given here, I simply cannot find that there is no genuine, material dispute of fact and that a reasonable jury could return a verdict only for the defendant. Because defendant has failed to establish an absence of evidence to support the plaintiff's claim, its motion for summary judgment on count two must be denied.

### *V. CONCLUSION*

Based on the above findings of undisputed facts and the law as discussed in section IV., I find that there remains a genuine issue of material fact and that defendant therefore is not entitled to summary judgment on this record.

It is

ORDERED that defendant's motion for summary judgment on count one is granted as unopposed. It is further

ORDERED that defendant's motion for summary judgment on count two is denied.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
November 7, 2007